IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICKY HICKS,
Individually and on behalf of S.H, a minor,

       Plaintiff,

vs.                                                            No. CV 12-0231 RB/LFG

WINGATE ELEMENTARY SCHOOL,
CHRISTINE EDSITTY-BEACH, Middle
School Director of Wingate Elementary School,
SADIE MARTINEZ, Counselor at Wingate
Elementary School, and the
UNITED STATES OF AMERICA,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

       This case concerns the efforts by a fourteen-year-old student and her mother to redress the student's treatment at a Bureau of Indian Education ("BIE") middle school after she informed a limited number of administrators and teachers that she was pregnant. On March 6, 2012, Vicky Hicks, individually and on behalf of her daughter, S.H., brought this action alleging violations of the First and Fifth Amendments by Wingate Elementary School, Christine Edsitty-Beach, and Sadie Martinez pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 1). Upon Plaintiff's consent, Wingate Elementary School was dismissed as a Defendant on January 24, 2013. (Doc. 87). Plaintiff amended her complaint on June 28, 2013, adding claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"). (Doc. 95). This matter is now before the Court on Edsitty-Beach's and Martinez's ("Defendants'") Motion to Dismiss. (Doc. 53). Having considered the submissions of counsel, relevant law, and otherwise being fully advised, the Court grants the motion.

### I.   Legal Standard

Rule 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). However, the court need not accept as true legal conclusions contained in the complaint. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A *Bivens* action is, in essence, an implied private right of action for damages based on an alleged violation of the Constitution by a federal official. *See Bivens*, 403 U.S. at 397; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). A plaintiff asserting a claim for damages pursuant to *Bivens* must satisfy several threshold inquiries before the court can reach the merits of the claim. First, the plaintiff must demonstrate that a right of action should be implied in a given case. The Supreme Court has held that no *Bivens* action will lie where there is an "'alternative, existing process' capable of protecting the interests at stake." *Minneci v. Pollard*, 565 U.S. ---, ---, 132 S. Ct. 617, 623 (2012) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Absent an alternative, a *Bivens* remedy remains "a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before

authorizing a new kind of federal litigation.'" *Wilkie*, 551 U.S. at 550 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). Second, "[e]ven in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit." *Hui v. Castaneda*, 559 U.S. 799, ---, 130 S. Ct. 1845, 1852 (2010). To demonstrate that a defendant is not entitled to qualified immunity, the plaintiff must "allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

## II.     Background

S.H. was, at all relevant times, an eighth grade student at Wingate Elementary School. Wingate Elementary is a public, co-educational school for children in kindergarten through eighth grade that is operated by the BIE. Students may opt to reside in the dormitories at Wingate Elementary, or they may attend Wingate Elementary as day students. S.H. began the school year as a boarding student.

On October 11, 2011, S.H. attended a doctor's appointment with her mother, Vicky Hicks. At that appointment, S.H. and her mother learned that S.H. was pregnant.[1] Hicks attempted to return S.H. to the dormitories the next day and informed Vera Cardy, the dormitory manager, that S.H. was pregnant. Cardy stated that S.H. could not continue to live in the dormitories due to her pregnancy and refused to allow S.H. to return to her room. On October 13,

---

[1] Defendants repeatedly assert in their motion that S.H. was six months pregnant in October of 2011. However, that is not a fact pleaded by S.H., and the sole support for that factual assertion is included in the Declarations that Defendants attached to their motion, which are improper at the motion to dismiss stage. Hicks specifically alleged that S.H.'s pregnancy was not visible in October of 2011.

3

2011, S.H. and Hicks attended a meeting at Wingate Elementary with three Wingate Elementary employees: Edsitty-Beach, the head teacher; Martinez, the school counselor; and Grace Benally, the federal programs director. At the meeting, Hicks disclosed the fact that S.H. was pregnant. The Wingate Elementary employees told Hicks that S.H. would not be allowed to live in the dormitories or attend Wingate Elementary. Their stated reason was that S.H.'s pregnancy would set a bad example for other students. They also stated that homebound instruction would not be provided for S.H. The next day, Hicks spoke to Timothy Nelson, the principal of Wingate Elementary. Nelson told Hicks that homebound instruction would be available for S.H.

Hicks contacted the American Civil Liberties Union of New Mexico, whereupon a letter was sent to Nelson dated October 17, 2011 requesting that S.H. be allowed to return to school and to enjoy all student privileges including the option to live in the dormitories. That same day, Nelson agreed to allow S.H. to return to school and to the dormitories immediately. S.H. returned to school on October 19, 2011 as a day student. S.H. missed four days of school.

On October 27, 2011, Wingate Elementary held an assembly for the middle school students. The same assembly had been held in prior years, and students who previously attended were allowed to go to a classroom to complete homework instead of attending the assembly. S.H. was among the students who previously attended the assembly, so she went to the classroom instead. Defendants were conducting the assembly, and the entire middle school was in attendance absent the students who were in the classroom completing homework. While the assembly was in progress, Edsitty-Beach sent a student to retrieve all of the students who were in the classroom, including S.H. When S.H. walked into the assembly, and while she was standing in front of the assembled students, Edsitty-Beach announced that S.H. was pregnant. Martinez repeated that S.H. was pregnant.

4

S.H. alleges that this announcement shocked and humiliated her. She had not told any of the students at Wingate Elementary about her pregnancy, with the exception of her sister, and her pregnancy was not obvious at the time. S.H. alleges that the announcement led other students to harass her. She claims that it was made to publicly embarrass and humiliate her in an effort to force her from Wingate Elementary and in retaliation for her continuing attendance at the school during her pregnancy. She asserts that she suffered and continues to suffer humiliation and emotional distress due to the announcement of her pregnancy.

Drawing on her allegations, Hicks raises three claims against Defendants. First, she asserts that Defendants violated S.H.'s right to privacy, safeguarded by the Fifth Amendment, by disclosing the fact of her pregnancy to the middle school student body without authorization. Second, she claims that Defendants' announcement violated S.H.'s right to equal protection preserved under the Fifth Amendment, discriminating against her on the basis of pregnancy and gender. Finally, Hicks alleges that the announcement violated the First Amendment in that it was a form of retaliation against S.H. for her protected decision to remain a student during her pregnancy. In addition to the claims against Defendants, Hicks amended her complaint on June 28, 2013 to add claims against the United States under the FTCA for the public disclosure of private facts and intentional infliction of emotional distress.

In their Motion to Dismiss, Defendants contend that it is inappropriate to imply a *Bivens* right of action in the instant matter. Even if a *Bivens* action were available, Defendants argue that they are entitled to qualified immunity because the allegations do not establish a constitutional violation nor was any right clearly established. (Doc. 53; Doc. 54). Hicks opposes the motion in its entirety. (Doc. 79).

### III. Availability of Implied Right of Action

In *Bivens*, the Supreme Court was confronted with a citizen whose constitutional rights had been invaded by federal rather than state actors. 403 U.S. at 390. The right in *Bivens* was not in doubt; the sole question was whether the Court had the power to authorize an award of damages as a remedy to vindicate that right. See *id.* at 400-02 (Harlan, J., concurring). The Court determined that the right could not be appropriately vindicated by state tort law, so it implied a private right of action for damages based on the alleged violation of a constitutionally protected interest by a federal official. *See id.* at 397; *Malesko*, 534 U.S. at 66.

In the four decades since *Bivens*, the Court has been extremely cautious in extending *Bivens* liability. Only twice since has the Court recognized an implied damages remedy, once under the Due Process Clause of the Fifth Amendment and once under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979). At every other turn, the Court has consistently refused to imply a right of action pursuant to *Bivens*. *See, e.g.*, *Pollard*, 565 U.S. ----, 132 S. Ct. 617; *Wilkie*, 551 U.S. at 550; *Malesko*, 534 U.S. 61; *Bush*, 462 U.S. 367. It has considered and decided against the existence of a *Bivens* action in the following instances: (1) a federal employee's claim that his employer dismissed him in violation of the First Amendment, *Bush*, 462 U.S. at 386-88; (2) a claim by military personnel that supervisors violated various constitutional provisions, *Chappell v. Wallace*, 462 U.S. 296, 298-300 (1983); (3) a Social Security disability benefit recipient's claim that benefits were denied in violation of the Fifth Amendment, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 425 (1988); (4) an employee's suit against a federal banking agency based on allegations that he lost his job due to agency action that violated the Fifth Amendment, *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); and (5) a federal prisoner's Eighth Amendment suit against

a private prison management corporation and persons employed by such a corporation, *Malesko*, 534 U.S. at 70-73; *Pollard*, 132 S. Ct. at 626.

Hicks asks the Court to create a new *Bivens* remedy for the disclosure of private information that allegedly resulted in three separate constitutional violations. The Defendants argue that the Court should not create a *Bivens* remedy in the instant case because alternative processes exist to vindicate the rights allegedly violated and because of special factors counseling hesitation.

### a. *Alternative, Existing Process*

As outlined above, courts may not imply a *Bivens* damages action where there is an alternative, existing process that can protect the interests at stake. *Pollard*, 565 U.S. at ----, 132 S. Ct. at 623 (quoting *Wilkie*, 551 U.S. at 550). Defendants contend that there are two alternative, existing processes to protect the interest of Hicks and S.H.: the FTCA and the Privacy Act, 5 U.S.C. § 552a.[2] The Court will address each suggested alternative in turn.

The FTCA does not constitute a sufficient alternative process to prevent the Court from implying a *Bivens* remedy. Indeed, the Supreme Court has held that the "FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated [plaintiffs] exclusively to the FTCA remedy." *Carlson*, 446 U.S. at 23. Eight years after *Carlson*, Congress passed the Federal Employees Liability Reform and Tort Compensation Act, part of which affirmatively declares that the FTCA is not the exclusive remedy when an injured plaintiff brings a *Bivens* action seeking damages for a constitutional violation by government employees acting in the scope of their employment. 28

---

[2] In Defendants' Reply, they suggest that the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, constitutes an alternative scheme for relief. However, it is clearly established that FERPA does not provide a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Thus, it cannot constitute an alternative process to vindicate the rights at issue.

U.S.C. § 2679(b)(2). As such, the Court finds it clearly established that the FTCA does not preclude a *Bivens* action.

Similarly, the Privacy Act does not constitute an alternative, existing process that protects the interests at stake. All parties acknowledge that Hicks and S.H. cannot obtain relief for their alleged injuries through the Privacy Act. The primary case relied upon by Defendants, *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), also involved an injury that could not be redressed through the Privacy Act. Though the court ultimately determined that the Privacy Act, combined with other factors, precluded a *Bivens* action, it did so pursuant to the "special factors" analysis rather than the alternative, existing process analysis. *Wilson*, 535 F.3d at 704-10.

Because neither the FTCA nor the Privacy Act afford protection from the injuries alleged, the Court finds that no alternative, existing processes guard the rights at issue.

### b. *Special Factors Counseling Hesitation*

Courts must decline to exercise their discretion to create a remedy against federal officials for constitutional violations where special factors counsel hesitation in doing so. *See Bivens*, 403 U.S. at 396. One special factor that courts commonly consider is the existence of a comprehensive remedial scheme. *See Bush*, 462 U.S. at 388-90 (concluding that federal civil service laws constitute a comprehensive remedial scheme and preclude an implied *Bivens* right of action). A scheme will be deemed comprehensive when its design "suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Chilicky*, 487 U.S. at 423. If Congress has created an elaborate remedial scheme, a *Bivens* remedy shall not be implied regardless of whether the plaintiffs are entitled to relief under the remedial scheme. *See Wilkie*, 551 U.S. at 562; *Bush*, 462 U.S. at 380. Indeed, the Supreme Court has stated that "[t]he absence of statutory relief for a

8

constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Chilicky*, 487 U.S. at 421-22. Read together, *Chilicky* and *Bush* demonstrate that courts must refrain from fashioning "damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Brothers v. Custis*, 886 F.2d 1282, 1284 (10th Cir. 1989) (citation omitted).

The Defendants suggest that the Privacy Act constitutes such a comprehensive remedial scheme.[3] The Privacy Act consists of "extensive provisions . . . governing disclosure of confidential information and access to agency records." *Williams v. Dep't of Veteran Affairs*, 879 F. Supp. 578, 585 (E.D. Va. 1995). Specifically, the Privacy Act prohibits an agency from disclosing "any record which is contained in a system of records by any means of communication . . . ." 5 U.S.C. § 552a(b). The term "record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history . . . ." 5 U.S.C. § 552a(a)(4). Should an agency make an improper disclosure that results in an adverse effect on the individual, that individual may bring a civil action against the agency. 5 U.S.C. § 552a(g)(1).

Relief would not be available to Hicks and S.H. for the disclosure of S.H.'s pregnancy under this statute. The remedial scheme of the Privacy Act does not encompass the disclosure of information that was not acquired from a system of records. *See Thomas v. U.S. Dep't of Energy*,

---

[3] The Defendants also argue that FERPA is a comprehensive scheme counseling hesitation in extending a remedy to the instant situation. However, the Supreme Court has determined that FERPA creates no individual rights and that there are no remedies available to an individual pursuant to FERPA. *Gonzaga Univ.*, 536 U.S. 273. As no remedy is available, the Court cannot find that FERPA constitutes a comprehensive remedial scheme counseling hesitation in creating a *Bivens* remedy.

719 F.2d 342, 345 (10th Cir. 1983) (citations omitted) (listing cases that have recognized a distinction between independently acquired information and information retrieved from a system of records for purposes of the Privacy Act). Because Defendants learned of S.H.'s pregnancy from Hicks, their disclosure of her pregnancy does not fall under the ambit of the Privacy Act, and no remedy pursuant to the Privacy Act is available.

However, the lack of a remedy is not dispositive. Rather, the question is whether Congress created a comprehensive remedial scheme, intended to omit damages remedies for claimants whose private information was disclosed but was not obtained from a system of records, and expressed any intent to preserve other damages remedies. No one contests that the Privacy Act is a comprehensive scheme to govern disclosures of information maintained within a system of records, and it is generally accepted among appellate and district courts that no *Bivens* action will lie when a federal agent or agency discloses information in violation of the Privacy Act. *See Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191 (W.D.N.Y. 1996); *Williams*, 879 F. Supp. 578; *Mittleman v. U.S. Treasury*, 773 F. Supp. 442 (D.D.C. 1991); *Patterson v. FBI*, 705 F. Supp. 1033 (D.N.J. 1989). The question presented here is whether the Privacy Act encompasses the entire field of disclosures of private information by federal agents.

The Privacy Act is the primary statute governing the disclosure of personal information by federal agents and agencies. The purpose of the Privacy Act, as stated by Congress, was "to provide certain safeguards for an individual against an invasion of personal privacy" by regulating "the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, §§ 2(a)(5), 2(b), 88 Stat. 1896.

In the instant case, the Defendants learned of the information at issue directly from Hicks rather than by accessing the information within a system of records. Hicks relies on this fact in an attempt to distinguish her case from the abundant precedent finding no *Bivens* remedy available for a federal agent's disclosure of private information in light of the Privacy Act. However, the Court finds this distinction untenable. The information at issue is precisely the sort of information that would be subject to the Privacy Act's protections. It is undisputed that the ACLU sent the school principal a letter about Wingate Elementary's obligation to educate S.H. regardless of her pregnancy. Additionally, there can be no doubt that schools maintain medical records for students, including any medical conditions such as pregnancy, which would be included as records under the Privacy Act's definition. Finally, it is likely that records were made of the meetings between Hicks and Wingate Elementary personnel regarding S.H.'s pregnancy and educational options. Thus, though the Defendants learned of the disclosed information orally rather than through a record, the information is certainly of the sort of which a record would be maintained and it is precisely the type of information with which the Privacy Act is concerned.

The Court agrees with Defendants that this case is strikingly similar to *Wilson*, 535 F.3d 697. In that case, the D.C. Circuit considered whether the Privacy Act constituted a comprehensive scheme sufficient to preclude a *Bivens* remedy despite the fact that the Privacy Act provided no remedy for the particular plaintiff. A CIA employee, Valerie Plame Wilson, and her husband, Joseph Wilson, brought a Bivens action against then-Vice President Cheney, his Chief of Staff, and the President's Deputy Chief of Staff based on the alleged improper disclosure of information by those individuals. *Id.* at 701-03. As a result of the disclosure, Mrs. Wilson was exposed as a CIA operative. *Id.* at 702. The Wilsons alleged a violation of Mr. Wilson's free speech rights based on retaliatory disclosure of the information; violations of both

his and Mrs. Wilson's equal protection rights; a violation of Mrs. Wilson's right to privacy based on the public disclosure of her personal information; and a violation of Mrs. Wilson's Fifth Amendment property rights based on the disclosure's effective elimination of her position. *Id.* at 703. None of these claims were cognizable under the Privacy Act. Mrs. Wilson's claims were barred because the Privacy Act excluded the three defendants from its coverage. *Id.* at 707. The Act provided Mr. Wilson with no relief because the Privacy Act only allows a claim by the person whose records are actually disclosed. *Id.* at 709. Nevertheless, the D.C. Circuit declined to create a *Bivens* remedy. *Id.* at 706-10. In so doing, the court determined that the Privacy Act was a comprehensive scheme governing the disclosure of private information by federal agents and explicitly rejected the notion that a comprehensive scheme precluding the creation of a *Bivens* remedy must include some remedy for the plaintiff. *Id.*

In accord with the reasoning of *Wilson* and consistent with the purposes of the Privacy Act, the Court concludes that the Privacy Act does constitute a comprehensive scheme governing the disclosure of private information that is included within records even if it is learned through independent means. The Privacy Act governs the disclosure of information contained within an individual's records and provides aggrieved parties with some remedies; though the remedies are not exhaustive, do not cover all disclosures, and do not provide remedies against all potential defendants, Congress has crafted what it considers to be an appropriate remedy for disclosure violations. Given the extensiveness of this remedial scheme, its failure to include additional remedies, such as damages for the disclosure of covered information learned from other sources or damages against individual officials, does not appear to be inadvertent. Finally, Congress did not indicate an intent to preserve *Bivens* remedies within the Privacy Act.

The cases cited by Hicks do not support her position that a *Bivens* action is available for the disclosure of private information. In *Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000), the plaintiff sought relief under *Bivens* and the Privacy Act based on his probation officer's disclosure of his HIV status to his sister. The Court did not consider whether a *Bivens* action was available to the plaintiff, instead finding that the defendant was entitled to qualified immunity. Though the court addressed the substance of the plaintiff's claims in the context of the qualified immunity analysis, it would be inaccurate to draw the inference that the court *sub silentio* found that a damages action for the alleged violation was available. Instead, it is important to recognize that there are two separate inquiries involved in determining whether a *Bivens* action may proceed against a federal agent: (1) whether the agent is amenable to suit; and (2) whether a damages remedy is available. *Hui*, 559 U.S. at ---, 130 S. Ct. at 1852. In *Herring*, the Tenth Circuit found that the defendant was not amenable to suit, and it did not consider whether a damages remedy for the alleged constitutional violation was available.

Likewise, in *Hunter v. S.E.C.*, 879 F. Supp. 494 (E.D. Pa. 1995), the court did not address whether a *Bivens* action should be implied. Unlike in *Herring*, the *Hunter* court denied the qualified immunity defense and thereby assumed that a *Bivens* remedy was available. *Id.* at 497-500. The court did not address the impact of the Privacy Act on the availability of a *Bivens* remedy, though it somewhat ironically relied on that statute and others to find that a person has a legitimate expectation of privacy in personal financial information. *Id.* at 498. Because the court did not analyze the propriety of implying a damages remedy pursuant to *Bivens* for the disclosure of information contained within financial records, this Court finds the decision in *Hunter* unpersuasive.

An additional factor counseling hesitation in extending a *Bivens* right of action in the instant matter is the general reluctance of the courts to extend a *Bivens* remedy to any new context. The Supreme Court has cautioned "hesitation" before "authorizing a new kind of federal litigation" in the *Bivens* context. *See Wilkie*, 127 S.Ct. at 2598 (quoting *Bush*, 462 U.S. at 378). Indeed, the highest degree of caution must be exercised in the realm of the judicial creation of new damages remedies. As explained above, the Supreme Court has only twice extended a *Bivens* remedy to a new arena since its decision in *Bivens*, doing so for the final time over thirty years ago. This Court has found no prior authority extending a *Bivens* damages action to governmental disclosures of private information with the exception of *Hunter*. Thus, Hicks' assertion of an implied cause of action for these alleged violations is unprecedented. Additionally, the constitutional protection to which the underlying conduct is entitled is uncertain. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. ---, ---, 131 S. Ct. 746, 764 (2011) (Scalia, J., concurring) ("A federal constitutional right to 'informational privacy' does not exist."). The Court finds that these considerations are additional factors counseling hesitation in extending a *Bivens* remedy in the instant case.

Each claim in Hicks' Amended Complaint against the individual Defendants is based on the disclosure of her pregnancy. As such, the Court finds that no *Bivens* remedy can be extended to any of her claims. The disclosure of private information is governed by the comprehensive scheme of the Privacy Act. Additionally, the reluctance of courts to extend *Bivens* remedies in new contexts counsels against the creation of a *Bivens* remedy for Hicks' claims, particularly in light of the Privacy Act. Though the Court is concerned that Hicks is left without a remedy against the individual Defendants, the creation of remedies is a task best left to Congress. Hicks

may still obtain a remedy for the alleged violations through her FTCA claims against the United States.

**THEREFORE,**

**IT IS ORDERED** that Defendants Christine Edsitty-Beach's and Sadie Martinez's Motion to Dismiss (Doc. 53) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**